No. 40,035

RUTH HINEMAN, Widow of George E. Hineman, Deceased, *Appellant*, v. KALO A. HINEMAN, Executor of the Estate of George E. Hineman, Deceased; KALO A. HINEMAN, Individually, and RICHARD E. HINEMAN, Beneficiary under the Will of George E. Hineman, Deceased, *Appellees*.

(297 P. 2d 149)

Opinion filed May 5, 1956.

*John Staley Holden*, of Cimarron, argued the cause and was on the briefs for the appellant.

*A. M. Fleming*, of Garden City, and *Eugene T. Shields*, of Dighton, argued the cause, and *C. E. Vance*, and *Bert J. Vance*, both of Garden City, and *James E. Mowery*, of Dighton, were with them on the briefs for the appellees.

The opinion of the court was delivered by

ROBB, J.: This appeal is from the judgment of the trial court denying appellant's claim as a common-law wife to an interest in her purported husband's estate after his death.

George E. Hineman and Nancy Esther Hineman were husband and wife and had had four children prior to their divorce on October 4, 1952, which became final on April 4, 1953. George died on October 28, 1953, at Garden City. He left his estate to his four children by a will dated June 3, 1953.

For the sake of convenience George E. Hineman will be referred to herein as decedent; Ruth Hineman, variously known as Ruth Hauser, Ruth Liggett, Mrs. Glenn Liggett, and Mrs. George E. Hineman, as Ruth; Glenn Liggett as Liggett; and Kalo A. Hineman, decedent's son, who was duly appointed, qualified, and acting executor of his deceased father's estate, as Kalo.

Decedent's will designating Kalo as executor was admitted to probate on November 18, 1953. On April 29, 1954, Ruth filed an

election of surviving spouse to take under the law of intestate succession (G. S. 1949, 59-603) in the probate court of Finney county, which instrument was recorded by order of that court on the same date. On May 12, 1954, Kalo filed a petition to strike Ruth's election and to set aside the order recording it. This was followed on May 28, 1954, by Ruth's petition for allowance of demand and defense to Kalo's petition of May 12, 1954, where she set up a common-law marriage entered into between her and decedent on July 12, 1953. On August 30, 1954, the proceedings were transferred to the district court for hearing. The record stated that on February 21, 1954, which date in the ordinary sequence of things must have been February 21, 1955, Richard Hineman, another son and legatee of decedent, filed a petition wherein he denied Ruth's contentions as to the common-law marriage because she was Liggett's wife. Kalo later filed a petition which also denied Ruth's allegations.

Evidence was introduced which sustained Ruth's contention there was a holding out, during decedent's lifetime, by both her and decedent of the relationship between them of man and wife by certain introductions and their behavior in the presence of other people. This was especially true during a time they were in Colorado.

The record disclosed Ruth had met Liggett in Evergreen, Colorado, in August, 1947. She had gone with him to New York, thence to Arizona, and finally to Garden City. They met decedent in Garden City in 1948 at the El Rancho Trailer Court where she and Liggett were registered as Mr. and Mrs. Glenn Liggett. They were known as Mr. and Mrs. Glenn Liggett in Garden City, and Ruth also used the name of Ruth Hauser which continued "up until the time of his [decedent's] death. . . ." At different times Ruth had purchased two trailers in which she and Liggett had resided. They were partners in a business venture during most of their acquaintanceship. There were meretricious, illicit relations indulged in between Ruth and the decedent which were admitted by Ruth to be such only from the time of their meeting and until the divorce decree of decedent became final; after that time such relations were in support of her contention of common-law marriage.

In addition, there was testimony that Ruth had borrowed money at a bank as Mrs. Glenn Liggett, had filed an application for in-

surance, and had made income tax returns in a like manner. Decedent had purchased a Mercury and later a Lincoln automobile, but the certificates of title contained the name of Ruth "Hauser." After decedent's death it was discovered that the title to the trailer in which he resided had been transferred to Ruth "Hauser." At the time of his death, Ruth stated to at least three people, including the undertaker while he was making out the death certificate, that decedent was single, but they had intended to get married.

Adverse to the contention of appellant, we are of the opinion that these facts which appeared in the record and were set out more fully in the trial court's findings of fact were a sufficient and competent basis for the trial court's conclusion of law and judgment that there was no relation of a common-law marriage established between Ruth and the decedent, and that as a result she had no rights in his estate as a surviving spouse or widow. The trial court even went so far as to say that although certain witnesses testified decedent had told them that he and Ruth were married, ". . . the Court does not believe such testimony of such witnesses."

The subject of common-law marriage has been well covered in two of our late decisions. (*Amerine v. Amerine, Executor,* 178 Kan. 79, 283 P. 2d 469; *Whetstone v. Whetstone,* 178 Kan. 595, 290 P. 2d 1022.) We believe that under the facts and circumstances here presented it will not strengthen this opinion to set out and analyze all the authorities from Kansas and Colorado cited by counsel, or additional cases from those two jurisdictions not cited by counsel which also touch upon some phase of common-law marriage. There is very little, if any, distinguishable difference between the two jurisdictions so far as the law relating to common-law marriage is concerned.

There were many questions raised by appellant but they all center around and depend so completely on the one point of common-law marriage that we do not deem it necessary to encumber the record with a full and detailed discussion of them in view of what we have heretofore said.

In conclusion, there was an abundance of highly conflicting evidence as to whether Ruth had been held out as the wife of decedent or as the wife of Liggett. We adhere, as we have consistently done in the past, to the rule that where the trial court has made findings of fact based upon substantial and competent evidence such findings

will not be disturbed on appeal notwithstanding the record may .reflect evidence which would support a contrary or different finding.

The judgment is affirmed.